# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Clark v. Freeport Clays, Products and Minerals Company, Appellant (No. 1).

*Corporations—Contracts—Ratification—"One man corporation"—Real estate broker—Act of May 7, 1907, P. L. 175.*

1. Where the vice president who is also general manager of a corporation owns and absolutely controls all the stock of the company, and the company has no president, and the vice president and general manager has the full and absolute management of the corporation's affairs, he may bind the company by a contract to pay $1,500 to an agent to procure a loan of $5,000 for the corporation.

2. Occasional transactions by an attorney at law on behalf of a client in the investment of money are incidental to his principal business and are not regarded as constituting him a broker under the Act of May 7, 1907, P. L. 175.

Argued May 13, 1912. Appeal, No. 80, April T., 1912, by defendants, from judgment of C. P., Armstrong Co., March T., 1911, Nos. 80 and 81, on verdict for plaintiff in case of S. F. Clark v. Freeport Clays, Products and Minerals Company, a Corporation, and Jennings Dewitt. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit for commissions.

The contract upon which the suit was brought was as follows:

" Mr. S. F. Clark,

   " Freeport, Pa.

   " Dear Sir: I the undersigned hereby agree and promise the said S. F. Clark that upon his procuring the sum of $5,000 for the Freeport Clays, Products and Minerals Co., upon a certain bond and mortgage to be executed by its proper officers or by some one legally authorized and designated by the said company to the person or persons loaning the aforesaid $5,000, for one year from the date of said bond and mortgage at such rate of interest as shall be agreed upon between the mortgagor and mortgagee. Said mortgage to be a lien upon all the lands, minerals, mineral rights and coal lands of the said company situated in Armstrong County now being or hereafter being in the name and right in fee of said company or J. G. Runkle and Jennings DeWitt or the Butler Savings & Trust Co., of Butler, Pa., as security for said loan.

   " It is further agreed on the part of said company and Jennings DeWitt, its vice-president and authorized agent, and on the part of Jennings DeWitt, an individual, that they and each of them will pay to the said S. F. Clark the sum or rates of money hereinafter stated, viz. (2½ per cent.) two and one-half per cent. on the sale of $60,000 of the preferred stock of the company whether this stock be placed by J. DeWitt in person or by other agencies, in installments as stock is issued and paid for.  As a further consideration to the said Clark it is agreed to give and deliver to him without further cost (10) ten shares of the preferred capital stock of the said company and (5) five shares of the common stock of the company total par value of said (15) fifteen shares being ($1,500) one thousand five hundred dollars.

   " Said Clark agrees as a consideration on his part to endeavor to secure the aforesaid loan for said company and persons within five (5) days from the date hereof.  It is further agreed and understood that should the said Clark fail to secure the said sum of money on the aforesaid securities for the said company and person then all parties

shall be released from this agreement after that date and the same shall become null and void and of no effect.

" In witness whereof the above named parties have this third day of Dec., 1909, set their hands and seals.

"Freeport Clays, Products and Minerals Co.   '

JENNINGS DEWITT,

Vice-Pres.

JENNINGS DEWITT.

S. F. CLARK.

Witness: CHAS. T. ROSS.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff against both defendants for $1,500. The Freeport Clays, Products and Minerals Company took appeal, No. 80, April T., 1912, and Jennings DeWitt took appeal, No. 81, April T., 1912.

*Error assigned* was in refusal of binding instructions for defendants.

*C. E. Harrington*, with him *R. P. Scott* and *H. N. Snyder*, for appellants.—Acceptance of benefits of unauthorized action by an agent will not raise an estoppel, unless done with notice or knowledge on the part of the principal. Knowledge by the president of a corporation, acquired in another transaction is not notice to the corporation: Bangor & Portland Ry. Co. v. American Bangor Slate Co., 203 Pa. 6; Copeland v. Tannery Co., 142 Pa. 446; Twelfth Street Market Co. v. Jackson, 102 Pa. 269; B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579; United Security Life Ins. & Trust Co. v. Nat. Bank, 185 Pa. 586; Gunster v. Scranton Ill. Heat & Power Co., 181 Pa. 327; Millward-Cliff Cracker Co.'s Estate, 161 Pa. 157.

The alleged commission contract is a fraud upon the stockholders. Clark was bound to know that a contract providing for the wholesale disposal of the preferred treasury stock was at least questionable: Worthington v. Ry. Co., 10 Pa. Superior Ct. 117.

*H. A. Heilman* and *H. L. Golden,* for appellee, cited: Chestnut Street Trust & Savings Fund Company v. Record Publishing Company, 227 Pa. 235; First National Bank v. Colonial Hotel Co., 226 Pa. 292.

OPINION BY HENDERSON, J., October 14, 1912:

The evidence presented at the trial makes it clear that Jennings DeWitt who was the vice president and general manager had the unrestrained control of the affairs of the corporation. There was no president; there had been but one meeting of directors; there were neither articles of association nor by-laws, and we do not find any evidence that Runkell, the secretary, and Rustler, the treasurer, were stockholders. According to the evidence presented all the outstanding stock of the company of the par value of $100,000 was issued to DeWitt, who gave therefor $2,500 in cash and his obligations for $97,500, and apparently it was on this basis of $2,500 cash that the company was doing business. Its visible assets consisted of a piece of land the price of which did not exceed $3,000 and on which there was a mortgage of $1,500. The evidence is not clear whether a payment of $1,500 was made on the property on which the $1,500 mortgage was placed or whether this mortgage was for the whole consideration. DeWitt managed all the business, including the negotiations with which the plaintiff was connected through the contract on which suit was brought. The court was not in error therefore in affirming the plaintiff's first point. The evidence warrants the assumption of the facts stated in the point, and the answer is in harmony with the doctrine of Chestnut Street Trust & Sav. Fund Co. v. Record Pub. Co., 227 Pa. 235, in which it was held that where the stockholders and directors turn over to an officer the full and absolute management of all corporation affairs and permit him to exercise unrestrained control for a long course of time without instruction from, or reference to, any other authority, prima facie the officers so intrusted may be taken to have power to do any act which the

directors could authorize or ratify. The same principle is stated in First Nat. Bank v. Colonial Hotel Co., 226 Pa. 292. To the same effect is 2 Cook on Corporations, sec. 19. The case before us is more favorable to the plaintiff on the facts in this respect than those cited, for there is a lack of evidence of any attempt on the part of the directors or other officers of the company to manage or control. As DeWitt had control of the stock it is easy to see how he controlled the corporation. It was properly characterized as a "one man" corporation by the learned trial judge. It was in financial straits and needed money. The plaintiff on the strength of the contracts made with the defendants induced an acquaintance to furnish it. The stock turned over as a part consideration for the plaintiff's services had no market value at the time, and the commissions to be thereafter received may have been the chief consideration for the services rendered. The defendants had the legal capacity to agree to pay the price which was named in the contract. The consideration might be little or much as the enterprise succeeded or failed, and the plaintiff took his chances. We are not warranted in saying that the contract is void because it may have proved to be more valuable than would have been the case under other circumstances. We do not find in the testimony such evidence as would have authorized the court to hold that the plaintiff was a broker in the transaction out of which the action arises, and that he could not recover on the contract because he had not paid a license as broker. Occasional transactions by an attorney on behalf of a client in the investment of money are incidental to his principal business and are not regarded as constituting him a broker under the act of May 7, 1907, P. L. 175. It does not appear that he held himself out as one engaged in a brokerage business or that the negotiations of loans constituted his business. At any rate the question was one for the jury and not for the court. We are not convinced that the learned judge committed error in submitting the case to the jury on the charge and

answers to the points presented in the assignment of error. The issue was not complicated and was clearly stated to the jury.

We therefore affirm the judgment.