Opinion by
Orlady, J.,
The plaintiff recovered a verdict in the court below as dam *407 ages for the death of his four year old son, who sustained fatal injuries by being struck by one of the defendant’s cars in the city of Reading. The accident occurred at the intersection of Eighth and Chestnut streets in clear daylight, with an unobstructed view of the track and its immediate surroundings. The negligence alleged is that the motorman approached the crossing carelessly and inattentively, at an undue and unusual rate of speed, without sounding the bell, or giving any other warning, thus failing to obey the rules and regulations of the defendant in regard to occupying the tracks at crossings. The plaintiff’s son with six or eight other children was playing on the pavement, and from some cause not clearly explained, the little fellow started to cross the tracks in a diagonal manner, by running in the direction in which the car was moving, to the corner opposite where he and his playmates had been standing. The motorman was at his proper place, and the car was stopped within six or eight feet after the child was struck by the corner of the fender of the car. On the trial below the contention was that the plaintiff had not shown any negligence on the part of the defendant entitling him to recover, and that under all the evidence the verdict should be directed for the defendant, who offered no proof, relying on the motion for a nonsuit which was overruled by the court. A number of witnesses were examined, and while there is some confusion in their description of the particulars immediately preceding the collision with the child, the vital questions of the speed of the car, the exact point the boy started from, and the distance he ran before entering on the track, the attention the motorman gave to viewing the track at the crossing, the fact that the gong or bell was not sounded when the crossing was approached by the motorman, all these made the motorman’s negligence a question for the jury to pass upon. Other objects were in view which it is urged would reasonably attract the attention of the motorman, and the evidence shows, or at least the jury would be warranted in finding, that he did not make any effort to stop the car until his attention was called to the impending danger to the child by the cries of bystanders when, as above stated, the car was stopped within eight or ten feet of the point where *408 the collision occurred. The loop or turn the car was expected to make within its given schedule time was established by competent proof, and the distance of somewhat less than four miles, with forty-eight street crossings intervening, fixed with reasonable certainty the time the defendant expected the car to cover its schedule distance, as about one half an hour. This of course would not be conclusive of the rate of speed of the car at the time the accident occurred, but with the other testimony that the car was running faster than usual, it was at least for the consideration of the jury. In fixing the rate of speed, always a vexed and uncertain matter, the schedule in force would make it practically four miles in thirty minutes, or eight miles an hour, which in P. & It. R. R. Co. v. Long, 75 Pa. 257, was held of doubtful compatability with safety in passing through the streets of a populous town. The testimony received and objected to under the first and second assignments of error we understand as bearing on the question of the speed the company itself expected the motorman to make; and under the evidence, whether the speed of the car was unusual and unreasonable, whether the motorman was alert and attentive to his duties and had the car- under proper control, or whether it was not going faster than ordinarily, were properly submitted to the jury, particularly in the light of the rule issued by the company to its motormen that “in approaching street intersections and public or private driveways” the gong must be sounded and speed reduced. A careful analysis of the testimony leaves these purely questions of fact, depending on the evidence adduced from the eyewitnesses to the accident, and from which the jury would be justified in finding that the motorman was not looking at the crossing as he approached it. The rulé on this subject has been so frequently announced that there can be no doubt of the duty of the motorman in approaching a street crossing, or of his duty when he sees children or travelers about to enter upon the track, and it can reasonably be argued that had the motorman been alert according to the circumstances he would necessarily have seen this child running in the direction of the track, and should have known that his car would intercept him before he could cross in safety: *409 Karahuta v. Traction Company, 6 Pa. Superior Ct. 319; Conner v. Pittsburg Railways Company, 216 Pa. 609. While the child was but four years of age, he was in the charge of an elder brother aged eleven. The parents were poor, and the presence of the mother was necessary in the home where her duties required her to be. It could not be expected that children should be continually kept within the walls of the house, and as stated by Judge Sharswood in P., A. & M. Ry. Co. v. Pearson, 72 Pa. 169, “ to say it is negligence to permit a child to go out and play without it is accompanied by a grown attendant, would be to hold that free air and exercise should only be enjoyed by the wealthy, who are able to employ such attendants, and would amount to a denial of these blessings to the poor.” Under the authority of Hoon v. Traction Company, 204 Pa. 369, Del Rossi v. Cooney, 208 Pa. 233, the circumstances in the life of the parents were properly received in evidence, and the age of the caretaker and protector of the .child come within the requirements as fixed by a number of our cases: Harkins v. Traction Company, 173 Pa. 146; Woeckner v. Erie, etc., Company, 182 Pa. 182. We cannot agree with the contention so zealously made by appellant’s counsel that the evidence shows clearly that the child ran into the car, and that the accident could not have been avoided had the motorman been diligent in proportion to his surroundings. The place of the accident required him to observe every possible precaution. The intersection of much used streets in a' populous city and the presence of a number of children on the street near to his track, his view unobstructed from eighty to 100 feet, and this child approaching the track diagonally for a distance of at least fifteen feet, and his ability to stop the car within eight feet after the collision occurred, made it specially a case for the jury to say whether he did not cause the accident. The cases of this kind where it is for the court to direct the verdict are confined to those in which the uncontested evidence leads to the conclusion that the child ran in front of the car so quickly and under such circumstances that the driver or motorman had no reasonable ground to apprehend such action, and no time after it to avoid the collision: Oster v. Schuylkill Traction *410 Company, 195 Pa. 320; Jones v. United Traction Company, 201 Pa. 344; Conner v. Pittsburg Railways Company, 216 Pa. 609. The assignments of error are not sustained and the judgment is affirmed.